# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LARRY J. SULLIVAN, | Case No. CV 10-5718-JEM |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

## PROCEEDINGS

On July 30, 2010, Larry J. Sullivan ("Plaintiff" or "Claimant" or "Sullivan") filed a complaint seeking review of the decision by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for Social Security Disability Insurance Benefits.  The Commissioner filed an Answer on January 19, 2011.  On March 23, 2011, the parties filed a Joint Stipulation ("JS").

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the Magistrate Judge.  The matter is now ready for decision.  After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and the case dismissed with prejudice.

**BACKGROUND**

Plaintiff is a 60 year old male who filed an application for Disability Insurance Benefits on October 5, 2001, alleging severe back pain and mental disorder.  (AR 14, 40, 49.) Plaintiff has not engaged in substantial gainful activity since June 3, 2001, the alleged onset date of his disability.  (AR 23, 456.)

Plaintiff's claim was denied by the Commissioner.  (AR 14, 26-30.)  Plaintiff filed a timely request for hearing, which was held on December 2, 2002, in Downey, California, before Administrative Law Judge ("ALJ") William C. Thompson, Jr.  (AR 14.)  On February 28, 2003, the ALJ issued an unfavorable decision.  (AR 14-24.)  The Appeals Council denied Plaintiff's request for review on August 18, 2004.  (AR 4.)

Claimant filed a subsequent application for benefits on August 15, 2003.  (AR 482.) He was determined to be disabled beginning November 1, 2003.  (AR 482.)  Claimant's neurological condition apparently had deteriorated since the February 28, 2003, ALJ decision.  (AR 482.)

On February 7, 2006, U.S. Magistrate Judge James W. McMahon issued a Memorandum of Decision overturning the February 28, 2003, ALJ decision for the period from June 3, 2001, to November 1, 2003, "remanding the case to the Commissioner for further proceedings regarding Plaintiff's literacy and whether Plaintiff was disabled before November 1, 2003 only."  (AR 520.)  The Court noted that, if Plaintiff were found to be illiterate, he would be disabled under the Medical-Vocational Guidelines (the "Grids").  (AR 520.)  The District Court did not address any of the other findings in the February 28, 2003, ALJ decision.  (AR 486.)

On May 16, 2007, the Appeals Council vacated the February 28, 2003, ALJ decision and remanded to an ALJ for further proceedings on the issue of disability prior to November 1, 2003.  (AR 482-83.)  The Appeals Council did not direct the ALJ to explore any other issues.  (AR 451.)

1        Subsequently, a hearing was held in Downey, California, on July 6, 2007, before ALJ

2   Edward P. Schneeberger.  (AR 451.)  Claimant appeared and testified and was represented

3   by counsel.  Also appearing was medical expert Dr. Stephen H. Wells.  On August 16, 2007,

4   ALJ Schneeberger issued an unfavorable decision.  (AR 486-492.)  Due to procedural

5   issues (AR 449-451), the August 16, 2007, ALJ decision essentially was reissued on May

6   25, 2010.  (AR 449-457.)

7   **DISPUTED ISSUES**

8        As reflected in the Joint Stipulation, the only disputed issue that Plaintiff raises as  a

9   ground for reversal is as follows:

10       1.  Whether the ALJ properly found Plaintiff was not disabled prior to November 3,

11  2003?

12  **STANDARD OF REVIEW**

13       Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine

14  whether the ALJ's findings are supported by substantial evidence and free of legal error.

15  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924

16  F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by

17  substantial evidence and based on the proper legal standards).

18       Substantial evidence means "'more than a mere scintilla'. . . but less than a

19  preponderance."  Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson

20  v. Perales, 402 U.S. 389, 401 (1971)).  Substantial evidence is "such relevant evidence as a

21  reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S.

22  at 401 (internal quotations and citation omitted).

23       This Court must review the record as a whole and consider adverse as well as

24  supporting evidence.  Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

25  Where evidence is susceptible to more than one rational interpretation, the ALJ's decision

26  must be upheld.  Morgan v. Comm'r, 169 F.3d 595, 599 (9th Cir. 1999).  "However, a

27  reviewing court must consider the entire record as a whole and may not affirm simply by

28

1  isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting

2  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d

3  625, 630 (9th Cir. 2007).

4  **SEQUENTIAL EVALUATION**

5  The Social Security Act defines disability as the "inability to engage in any substantial

6  gainful activity by reason of any medically determinable physical or mental impairment

7  which can be expected to result in death or . . . can be expected to last for a continuous

8  period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The

9  Commissioner has established a five-step sequential process to determine whether a

10 claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

11 The first step is to determine whether the claimant is presently engaging in

12 substantial gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the

13 claimant is engaging in substantial gainful activity, disability benefits will be denied.  Bowen

14 v. Yuckert, 482 U.S. 137, 140 (1987).  Second, the ALJ must determine whether the

15 claimant has a severe impairment or combination of impairments.  Parra, 481 F.3d at 746.

16 An impairment is not severe if it does not significantly limit the claimant's ability to work.

17 Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Third, the ALJ must determine

18 whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the

19 regulations.  Id.  If the impediment meets or equals one of the listed impairments, the

20 claimant is presumptively disabled.  Bowen v. Yuckert, 482 U.S. at 141.  Fourth, the ALJ

21 must determine whether the impairment prevents the claimant from doing past relevant

22 work.  Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001).  Before making the step

23 four determination, the ALJ first must determine the claimant's residual functional capacity

24 ("RFC").[1]  20 C.F.R. § 416.920(e).  The RFC must consider all of the claimant's

25 impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2);

26 

27     [1] Residual functional capacity ("RFC") is what one "can still do despite [his or her]
   limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R.
28 §§ 404.1545(a)(1), 416.945(a)(1).

4

Social Security Ruling ("SSR") 96-8p.  If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity.  Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits.  Parra, 481 F.3d at 746.  Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g).  If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits.  Id.

In this case, the February 7, 2006 District Court decision directed the Commissioner to "reconsider whether the Plaintiff is disabled beginning with step three of the sequential evaluation."  (AR 520.)

**THE ALJ DECISION**

The May 25, 2010, ALJ decision upheld all findings of the prior ALJ decision except for literacy.  (AR 451.)  These findings included: (1) a determination at step one of the sequential process that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, (2) a determination at step two that Claimant had the medically determinable severe impairments of degenerative disc disease and depression, and (3) a determination at step three that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment.  (AR 456.)

The ALJ also incorporated the findings and analysis of the prior ALJ decision regarding Plaintiff's RFC.  (AR 453-454.)  The prior decision determined that Plaintiff could

perform "light unskilled work, which does not involve more than occasional climbing, stooping, crawling, crouching, or kneeling." (AR 454, 456.) As no new medical evidence was submitted for the period prior to November 1, 2003, the ALJ adopted the prior RFC. (AR 454.) The ALJ also adopted the adverse credibility finding contained in the prior ALJ decision. (AR 454.)

The ALJ then found at step four that Plaintiff was unable to perform his past relevant work. (AR 456.)

At step five, the ALJ determined that Plaintiff was literate and that, based on an exertional capacity for light work for someone closely approaching advanced age (50 to 54 during 2001-2003), Rule 202.10, Table No. 2 of the Grids, would direct a conclusion of not disabled. (AR 456.) Because of Claimant's nonexertional limitations that erode the light work occupational base, the ALJ adopted the opinion of the vocational expert who had testified previously that there were other jobs in the national economy Plaintiff could perform, including assembler, inspector and sorter. (AR 456-457.)

Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time prior to November 1, 2003. (AR 457.)

## DISCUSSION

### A.   The ALJ Finding That Plaintiff Is Literate Is Supported By Substantial Evidence

The Commissioner bears the burden at step five of the sequential process to prove that Sullivan can perform other work in the national economy, given his RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Silveira v. Apfel, 204 F.3d 1257, 1261 n.14 (9th Cir. 2000). Literacy or education level is relevant only to the step five inquiry and not to existence of a disability; thus, the Commissioner bears the burden of establishing here that Sullivan is literate. Id. In this case, the ALJ decision plainly satisfies that burden. The ALJ decision finding Sullivan can perform other work in the national economy is supported by substantial evidence and free of legal error.

1    Social Security regulations define illiteracy as "the inability to read or write."  20

2    C.F.R. § 416.964(b)(1).  The regulations go on to say:

3         We consider someone illiterate if the person cannot read or write

4         a simple message such as instructions or inventory lists even though the

5         person can sign his or her name.  Generally, an illiterate person has had

6         little or no formal schooling.

7    Id.  A marginal education, by contrast, means 6th grade level or less, and a limited

8    education means 7th through 11th grade.  Id. § 416.964(b)(2) and (b)(3).

9    Applying that standard, the ALJ provided this analysis of Plaintiff's literacy:

10        The Administrative Law Judge notes that the District Court

11        concluded that the claimant's level of literacy or lack thereof had not

12        been sufficiently explored in the prior hearing decision.  As such, both the

13        District Court and the Appeals Council remanded the case for

14        reconsideration of the claimant's literacy level.  At his current hearing,

15        the claimant testified that he was never enrolled in a special education

16        program at school.  Rather, the claimant indicated that he stopped his

17        education at the eighth grade in order to go to work.  He indicated that he

18        could not actually read the text of the Bible, as he suggested at his prior

19        hearing, but only carried the Bible to church without actually ever reading

20        it.  The claimant further testified that his son and daughter-in-law filled

21        out the Social Security forms ahead of time for him.  He also denied

22        being able to read street signs, and indicated that he would memorize

23        routes before trying to navigate unfamiliar places.

24        Although the claimant's testimony might suggest that he lacks

25        basic literacy skills, this testimony is completely contradicted by written

26        test scores as well as the testimony of an impartial medical expert.

27        Specifically, Dr. Wells testified that the documentary record contained

28

1    various psychological tests, which were self-administered or involved

2    some aspect of sentence completion (Exhibits 18F).  The claimant

3    acknowledged to Dr. Wells that he took all of the tests on his own, and

4    that the questions were not read to him.  Rather, the claimant asserted

5    that he simply gave random answers to the test questions.  Dr. Wells

6    noted that the MMPI and the PAI, which were both administered to the

7    claimant, contain a very large number of questions.[2]  Dr. Wells further

8    stated that these tests have been carefully developed by psychologists

9    with scales, so as to assess if an individual was randomly answering

10   questions because he could not read or understand the questions.  Dr.

11   Wells reported that, in the claimant's case, the test scales did not

12   suggest that the claimant gave random answers.  Rather, the test scales

13   showed that the claimant was consistent and did understand the test

14   questions.  The claimant and his counsel were unable to provide any

15   adequate explanation for this obvious discrepancy.  The Administrative

16   Law Judge further notes that Dr. Wells testified that school records

17   corroborate that the claimant is literate.  Additionally, I.Q. scores, which

18   are attributed to the claimant, do not suggest that he is illiterate.  To the

19   contrary, the claimant is reported to have a full scale I.Q. in the low

20   average range (Exhibits 10E and 13F/5).  As such, Dr. Wells concluded

21   that the claimant was literate, as demonstrated by the psychological

22   testing.  The Administrative Law Judge concurs with the opinion of Dr.

23   Wells because the psychological tests are designed to reveal if an

24   individual is randomly giving responses.  This was not evident in the

25

26

27        [2]   Dr. Wells indicated that the MMPI contains 567 questions and the PAI contains
28   344 questions.

8

1           claimant's test scores.  As such, the claimant is determined to be literate

2           in English.

3  (AR 454-55.)  Accordingly, the ALJ found Plaintiff to be literate in English.  (AR 456.)

4         The District Court had observed that Plaintiff had testified that he "cannot write a

5  simple message" (AR 518) and, if true, Plaintiff should be considered illiterate.  (AR 518-

6  519.)  The District Court further recommended that the ALJ "might also consider referring

7  the Plaintiff to an adult literacy expert who could actually test the Plaintiff's literacy."  (AR

8  520.)

9         Plaintiff claims that the critical question in the District Court's February 7, 2006,

10  decision was not the ability to read but to write (AR 517-520), and that there was no

11  testimony or ALJ finding on the ability to write.  Thus, Plaintiff argues, the medical expert

12  and the ALJ did not comply with the District Court's Order or prove Plaintiff can write.

13         Plaintiff mischaracterizes the District Court's Order somewhat.  The District Court

14  decision did not establish that Plaintiff could read, as Plaintiff suggests.  It stated only that

15  "Plaintiff did not state that he could not read."  (AR 518.)  The decision specifically instructed

16  the ALJ on remand to explore what Plaintiff meant when he testified he read the Bible.  (AR

17  520.)  The ALJ was obliged to consider whether Plaintiff could read and write.

18         The ALJ decision satisfactorily determined that Plaintiff could read.  Dr. Wells

19  testified extensively that Plaintiff could read.  (AR 613-622.)  As Dr. Wells observed,

20  Plaintiff's performance on psychological tests demonstrated his ability to read.  Id.  Dr. Wells

21  testified that the psychological tests were scaled to assess whether someone was

22  answering randomly because he could not read.  (AR 454-55.)  Plaintiff answered a lengthy

23  series of questions on two tests in a manner that was consistent and demonstrated that he

24  understood the test questions, i.e., he could read.  (AR 454-55.)  Neither Plaintiff nor his

25  counsel had any explanation for this discrepancy.  (AR 454-55.)  The psychological tests,

26  Dr. Wells' opinion that Plaintiff can read (AR 617), and Plaintiff's eighth grade education and

27  low average IQ score constitute substantial evidence supporting the ALJ's finding that

28

Plaintiff can read.  Plaintiff does not contend on this appeal that he cannot read or that the ALJ did not meet his burden to establish that Plaintiff can read.

Plaintiff is correct that Dr. Wells did not testify that Plaintiff can write.  The ALJ decision states inaccurately that Dr. Wells concluded that Plaintiff was "literate, as demonstrated by the psychological testing."  (AR 455.)  Dr. Wells only concluded that Plaintiff could read.  (AR 617.)  He never discussed whether Plaintiff could write.

The ALJ decision, however, properly concluded that Plaintiff could write based on other evidence in the record.  The ALJ's finding that Plaintiff was literate plainly encompassed both the ability to read and the ability to write.  The ALJ found that Plaintiff's testimony that he lacks basic literacy skills is "completely contradicted by <u>written</u> test scores."  (AR 454 (emphasis added).)  More specifically, the ALJ stated that Dr. Wells had testified that the documentary record contained various psychological tests, which the ALJ noted "were self-administered or <u>involved some aspect of sentence completion</u>."  (AR 454 (emphasis added).)

Dr. Wells did not discuss sentence completion, but there is no dispute that Plaintiff completed the Forer Structured Sentence Completion Test.  (AR 322-25.)  This test consisted of 100 partial prompt sentences.  Plaintiff provided short completions that, although not elegant, make sense and demonstrate the ability to write short messages.  For example, in response to a partial sentence "I was not depressed when . . . ," he responded, "I was mistreated."  (AR 322.)  Again, to the partial sentence "I used to feel I was being held back by . . . ," he added, "not being smart."  (AR 322.)  There is little doubt that Plaintiff wrote those answers.

Plaintiff suggests that the record is ambiguous whether Plaintiff wrote the answers or someone recorded his answers for him.  At the hearing, when asked whether any of the psychological tests required him to complete sentences, Plaintiff responded, "I don't remember.  I don't recall writing any sentence."  (AR 608.)  Plaintiff's treating psychiatrist Dr. Thomas A. Curtis, however, makes clear that Plaintiff wrote the answers, "The patient also

completed the Forer Structured Sentence Completion Test." (AR 121.) There is more. When asked, "[D]id you physically complete the forms in your own handwriting," he replied "I believe I did." (AR 606.) Dr. Curtis testified that the tests were self-administered (AR 125), and Plaintiff testified that the questions were not read to him (AR 614) and that he took the tests "on the paperwork." (AR 607.)

The ALJ's literacy finding, then, was supported by substantial evidence of both Plaintiff's ability to read and his ability to write, as demonstrated by his sentence completions cited by the ALJ. The ALJ's literacy finding is also supported by Plaintiff's ability to read, his eighth grade education, his performance on the tests and his IQ score, all cited by the ALJ.

**B.    The ALJ's Light Work RFC Is Supported**
**By Substantial Evidence**

The ALJ decision of February 28, 2003, after considering the medical evidence, found that Plaintiff had an RFC for unskilled light work which does not involve more than occasional climbing, stooping, crawling, crouching, or kneeling. (AR 20.) This RFC finding was based in part on an adverse credibility determination as to Plaintiff's pain allegations. (AR 21.) The District Court did not disturb these findings and no new evidence was presented at the July 6, 2007, hearing. (AR 454.) As a result, ALJ Schneeberger adopted the prior RFC and adverse credibility findings of the February 28, 2003, ALJ decision. (AR 453-54.)

Plaintiff challenges his assessed RFC, claiming that he should have been limited to sedentary work, which would have required a disability finding under the Grids. Plaintiff also challenges the adverse credibility finding. Substantial evidence, however, supports the ALJ's RFC and credibility findings.

The February 28, 2003, ALJ decision found that the medical evidence of record did not support more restrictive limitations than those specified in the RFC. (AR 21.) Despite Plaintiff's degenerative disc disease and mental limitations, four state agency physicians

1  determined that Sullivan could do light work.  (AR 136-46, 150-52, 158-160; AR 167-68.)

2  The ALJ decision cites these medical opinions.  (AR 20.)

3        The opinions of non-examining physicians, however, may serve as substantial

4  evidence only when they are consistent with and supported by other independent evidence

5  in the record.  Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995); Morgan, 169 F.3d at

6  600.  Accordingly, the ALJ decision reviewed the orthopedic and psychiatric evidence from

7  California workers' compensation physicians.  (AR 15-17.)  The ALJ noted that these

8  opinions were directed at Plaintiff's ability to perform past work rather than other work as

9  defined in the Social Security regulations.  (AR 21.)  Nonetheless, even though terms of art

10 used in California workers' compensation proceedings are not equivalent to Social Security

11 terminology, an ALJ may not ignore a physician's medical opinion from a workers'

12 compensation proceeding.  Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104-05 (C.D. Cal.

13 2002).  The ALJ must "translate" terms of art contained in workers' compensation medical

14 reports and opinions into corresponding Social Security terminology in order to assess that

15 evidence for Social Security disability determinations.  Id. at 1106.  The ALJ must explain

16 the basis for any material inference the ALJ has drawn from those opinions so that

17 meaningful judicial review is possible.  Id.

18       The ALJ properly assessed the workers' compensation medical evidence in this

19 case.  He discussed the psychiatric evaluation of Dr. Curtis (AR 15), noting that despite

20 findings of depression, Dr. Curtis rated the degree of limitation at no more than moderate.

21 (AR 17.)  He also discussed and gave little weight to the neuropsychological examination of

22 Dr. Boone because his opinion of disability was inconsistent with his finding of only mild

23 symptoms.  (AR 16.)  Plaintiff does not dispute or discuss the ALJ's interpretation of the

24 medical evidence of Plaintiff's mental limitations.

25       The ALJ also properly assessed the orthopedic evidence.  He described the findings

26 and opinions of Dr. Sperling, Dr. Ambrosio and Dr. Creamer.  (AR 15, 16.)  Dr. Ambrosio

27 recommended "continued conservative management in the form of medical and physical

28

therapy" (AR 238, 241), an evaluation entirely consistent with the State reviewing physicians' assessments.  Only Dr. Creamer, however, provided specific work limitations, again in California workers' compensation terminology.  (AR 21.)  Dr. Creamer opined that the "patient has a disability precluding substantial work."  (AR 21.)  He found Plaintiff "has lost approximately 75% of his pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling and climbing or other activities involving comparable physical efforts."  (AR 221.)  He further opined that Plaintiff "should not do prolonged uninterrupted standing, and should not do repetitive walking on uneven surfaces."  (AR 221.)  The ALJ concluded that Dr. Creamer's restrictions do "not necessarily preclude occasional postural activities as required by light work."  (AR 21.)  Nor did Dr. Creamer assess whether Plaintiff could perform standing or walking for six hours with normal work breaks.  (AR 21.)

The ALJ, then, interpreted the workers' compensation evidence as consistent with the RFC assessed by State agency reviewing physicians.  Plaintiff repeats some of the medical findings previously described in attempting to establish a more restrictive RFC but does not explicitly challenge or even address the ALJ's "translation" of the workers' compensation medical evidence.  He does appear to claim that Dr. Sperling opined that Plaintiff has difficulty bending, stooping or squatting.  (JS 14.)  This is a mischaracterization of Dr. Sperling's report, which plainly was describing Plaintiff's own pain allegations.  (AR 189.)  The ALJ's RFC is supported by the medical evidence.

Plaintiff's assertion that he must be limited to sedentary work is based primarily on his excess pain allegations, which the ALJ found not credible.  (AR 21, 23.)  The ALJ summarized Plaintiff's hearing testimony as follows:

The claimant testified that he can only sit, stand, or walk for brief periods of five minutes due to pain.  He stated that he had to lie down

13

1        during the day, and could not lift more than five pounds.  He said that his

2        activities of daily living are severely limited due to pain.

3  (AR 21.)

4        The test for deciding whether to accept a claimant's subjective symptom testimony

5  turns on whether the claimant produces medical evidence of an impairment that reasonably

6  could be expected to produce the pain or other symptoms alleged.  Bunnell v. Sullivan, 947

7  F.2d 341, 346 (9th Cir. 1991); see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.

8  1998); Smolen, 80 F.3d at 1281-82 & n.2.  The Commissioner may not discredit a claimant's

9  testimony on the severity of symptoms merely because they are unsupported by objective

10  medical evidence.  Reddick, 157 F.3d at 722; Bunnell, 947 F.2d at 343, 345.  If the ALJ

11  finds the claimant's symptom testimony not credible, the ALJ "must specifically make

12  findings which support this conclusion."  Bunnell, 947 F.2d at 345.  These findings must be

13  "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit

14  [the] claimant's testimony."  Thomas, 278 F.3d at 958; see also Rollins v. Massanari, 261

15  F.3d 853, 856-57 (9th Cir. 2001); Bunnell, 947 F.2d at 345-46.  Unless there is evidence of

16  malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms

17  only by offering "specific, clear and convincing reasons for doing so."  Smolen, 80 F.3d at

18  1283-84; see also Reddick, 157 F.3d at 722.  The ALJ must identify what testimony is not

19  credible and what evidence discredits the testimony.  Reddick, 157 F.3d at 722; Smolen, 80

20  F.3d at 1284.

21        Substantial evidence supports the original adverse credibility finding.  The February

22  28, 2003, ALJ decision sets forth the following evidence of exaggeration:

23        The claimant has alleged severe pain and limitations, but this is

24        inconsistent with his conservative treatment.  He is not on narcotic pain

25        medication.  In fact, in April 2002, the claimant stated that he was only

26        taking one aspirin per day, needed to recline only 30-60 minutes per day,

27        and was only sporadically using a back brace for a few hours per week

28

(Exhibit 12f).  He said that he could only sit five minutes at a time, but he
also testified that he drove 20 miles daily with therapy.  He said he could
only lift five pounds, but then said that he could lift a gallon of milk, which
weighs approximately 8 pounds.  He said that he could not read but then
said that he could read the Bible.  Moreover, although he stated that his
activities of daily living are extremely limited, he can participate in
therapy, attend church, use a treadmill, drive daily, and run some
errands when necessary.  These statements suggest a certain amount of
exaggeration of limitations on the part of the claimant.

(AR 21.)  Plaintiff challenges the ALJ's interpretation of the evidence, but the responsibility
for evaluating and interpreting the evidence lies with the ALJ.  Moreover, where Plaintiff
simply offers a different interpretation of the evidence, the ALJ's assessment must be
upheld if rational.  Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Fair v. Bowen,
885 F.2d 597, 603-04 (9th Cir. 1989).

The ALJ noted Plaintiff's conservative care, which is a basis for discounting a
claimant's testimony about the severity of his impairment.  Parra, 481 F.3d at 751.
Substantial evidence supports the ALJ's analysis.  Plaintiff's orthopedic surgeon Dr.
Ambrosio recommended "continued conservative management in the form of medication
and physical therapy."  (AR 238, 241.)  Dr. Maze, a consulting examiner, did describe
Plaintiff's treatment as "aggressive" (AR 567), but Dr. Maze did not review the medical
records and was relying on Plaintiff's reported history.  (AR 564.)  The opinion of treating
physician Dr. Ambrosio that Plaintiff was receiving "conservative" treatment is more reliable
than a consulting physician's opinion based only on the Claimant's report.  Andrews v.
Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).

There also were inconsistencies in Plaintiff's statements, exaggerations of his lack of
literacy and daily activities such as walking on a treadmill and driving daily that are
inconsistent with a limitation to sedentary work.  (AR 21.)  Although Plaintiff disputes these

findings, the ALJ's interpretation of this evidence was rational.  In the Joint Stipulation, Plaintiff did not reply to the Commissioner's analysis of this evidence.  Where the record supports more than one rational interpretation of the evidence, the ALJ's decision must be upheld.  <u>Burch</u>, <u>Fair</u>, <u>supra</u>.

In combination, the factors cited by the ALJ constitute clear and convincing reasons for rejecting Plaintiff's credibility.  The ALJ's light work RFC is supported by substantial evidence and free of legal error.

## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED and that this action is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: <u>April 19, 2011</u>                    <u>     /s/ John E. McDermott     </u>
                                                                JOHN E. MCDERMOTT
                                                                UNITED STATES MAGISTRATE JUDGE

16